## GRAVES v. THE STATE.

1. A publication that the prosecutor was charged and proven guilty, by the
affidavits of some seven or eight of the most respectable gentlemen of the
county, of both fraud and lying, is not justified by the production of affida-
vits used before an ecclesastical tribunal, upon a charge preferred by the
defendant against the prosecutor; and when so produced, it is competent
for the proseution to inquire what was the decision of that tribunal.

2. Evidence of witnesses, that the impression and conviction produced on
their minds, by the evidence before the eclesiasticnl tribunal, was different
from its decision—or of the opinions expressed by others, as their decision
and conviction upon the same evidence—or of the impression and belief
in the community, whether the evidence established the charges, is inad-
missible in mitigation of damages. The effect of such evidence, is to put

Graves v. The State.

the opinions of others in the stead of the verdict of the jury upon the same evidence.

3. Evidence that the prosecutor, previous to the publication, had used violent, abusive and slanderous words concerning the defendant, which had been communicated to him about a month previous to the publication, is not admissible in mitigation of damages; it not appearing that the defendant's publication was provoked by, or in any manner connected with, the previous slanderous words of the prosecutor.

Questions referred as novel and difficult by the Circuit Court of Dallas.

INDICTMENT for a libel, by a publication in the form of a hand-bill, directed to the public ; containing divers false, scandalous and malicious matters, of and concerning Ebenezer Hearn, and of and concerning charges alledged against the character of the said Ebenezer Hearne, in the year 1831, according to the tenor and effect following, that is to say : that in '31, [meaning in the year of Our Lord, 1831,] the Rev. E. Hearn, [meaning the said Ebenezer Hearn,] who was most prominent in the conference, was charged, and proven guilty, by the affidavits of some seven or eight of the most respectable gentlemen in the county, of both fraud and lying ; if any question this, I will show the documents. But, oh !" &c.

On the trial, the defence was, that the words set out in the indictment, the publication of which was not controverted, were in fact true. To establish this, the defendant produced other evidence, given at a church trial, had at Lebanon, in Dallas county, previous to the publication, the subject of the indictment, on certain charges preferred by Graves against Hearne, two of which were for fraud and lying—the evidence given upon that trial having a tendency to establish the truth of the charges. After the defendant had produced this evidence in the cause, the State then proposed, upon a cross examination of the witnesses, to prove what was the decision of the committee, or persons constituting the tribunal upon that evidence. The defendant objected to this, but the court allowed the witnesses to answer, and they stated the decision was, that Hearne was not guilty.

After this ruling by the court, and proof to the jury, the

defendant proposed to show, by certain persons then present as witnesses, and who were also present at the church trial, and heard the evidence upon which the church decision was had, that the impression and conviction produced by such evidence on their minds, was different from the decision. This evidence was offered on the ground that it was good in mitigation of damages.   It was, however, rejected by the court.

The defendant then proposed to show, in mitigation of damages, what the persons present and hearing such evidence expressed as their decision and conviction upon the same. This also was refused.

The defendant then proposed to show in mitigation of damages, what was the general impression and belief in the community, as to whether the evidence did establish and prove said charges, as alledged in the words contained in the indictment.   This was also refused.

The several questions of law arising out of the matters stated, were reserved by the presiding Judge, as novel and difficult, and the defendant having been convicted, they are brought here for revision.

EDWARDS and G. W. GAYLE, for the defendant.

CLARKE, (Attorney General,) and G. R. EVANS, for the State.

GOLDTHWAITE, J.—1. The first question on this record is, whether it was competent for the prosecution to show what was the decision of the eclesiastical tribunal on the evidence before it.   It seems that the defendant introduced this evidence to prove the truth of the published words; but we are not informed by the reservation of this point, whether the court below admitted the proof as a matter of justification; or whether it was considered proper in explanation of the *quo animo*, or in mitigation of damages.   It is only in the first connection that it is necessary now to consider the question; because, if admitted in either of the two last mentioned aspects, it is very clear, the decision was as much a matter to be put before the jury as the charge itself, or the evidence in

support of that. We understand the counsel for the defend-
ant here to claim, that his publication asserted only, that the
prosecutor had been charged in a certain manner with fraud
and lying; and, therefore, proof that he had been so charged
was sufficient to exculpate the defendant. In our judgment,
however, the words set out in the indictment, impute to the
prosecutor, not merely that he had been charged in the man-
ner asserted, but also that the charge had been proved against
him. If the charge of lying and fraud was not sustained by
evidence, it then became material to inquire into the *quo an-
imo* with which the publication was made, and in this con-
nection it was entirely proper to show, that the tribunal be-
fore which the defendant had charged the prosecutor had
acquitted him upon the evidence before it. In the publish-
ed words, there is no reference by name to the persons who
had thus charged the prosecutor; and therefore it is unneces-
sary to determine how far slanderous words may be justified
by giving another as the author by whom the same assertion
had previously been made. We may remark, that although
there are decisions which recognize such as a legal rule, (Da-
vis v. Lewis, 7 Term, 19,) yet it is now denied, both in
England and the courts of this country. [Bennett v. Ben-
nett, 6 C. & P. 588; De Crespegny v. Wellesley, 2 M. & P.
695; McPherson v. Daniels, 10 B. & C. 263; Dale v. Lyon,
10 John. 447; Treat v. Browning, 4 Conn. 408.] Upon
principle it scarcely seems to admit of doubt, that one wrong
doer cannot shelter himself from responsibility, when he ma-
liciously repeats the false assertion of another, although at the
time of publication he mentions the source from which it
sprung. Here, however, there was no reference by name to
the persons making the affidavits in support of the charge,
and therefore, if the less modern rule were conceded to exist,
the case would not be brought within it. We are entirely
satisfied, it was proper for the prosecution, in the connection
in which the defendant's evidence was admitted, to put the
decision of the eclesiastical tribunal as a fact before the jury.

2. Having shown, that *prima facie*, the published words
are to be considered as a charge by the defendant, that the
prosecutor had been guilty of fraud and lying, it rested with
the defence to show the truth of the charge, or to divest the

Graves v. The State.

publication from the presumption of malice, arising out of its falsity. [Greenl. Ev. 21.] If it was proper for the defendant in mitigation of damages, to show his belief of the charges, at the time of publication, without a distinct admission, that in point of fact they were untrue—which, however, it has been held cannot be done, (4 Wend. 659,)—yet the evidence offered had no tendency to shed light upon that point. The evidence was before the jury, and from that the impression upon the mind of the defendant was to be ascertained, if important to be ascertained, in connection with the question of either malice or damages. The effect produced by it upon the opinions of others hearing it, was not a proper subject of investigation, as it could lead to no other result than the substitution of those opinions, in the stead of the verdict of the jury, on the same testimony. The same objections apply to evidence of opinions expressed by others on the same state of facts, and to the impression and belief of the community. In every aspect in which this description of evidence was offered, it amounted to nothing more than the opinion of others upon the testimony then before the jury for consideration. In our judgment there is no ground upon which to rest its admission.

3. The only point remaining to be examined is, whether evidence of violent, abusive and slanderous words, used by the prosecutor concerning the defendant, previous to the publication, and communicated about one month before that was made, was admissible under the circumstances of this case. The rule with respect to letting in evidence of this description, is well laid down in Maynard v. Beardsley, 7 Wend. 560, where it is said, slanderous publications by the plaintiff against the defendant may be shown, to extenuate the offence, provided there is a fair presumption that the libel charged was written in the heat of blood, *and in consequence of the provocation.* To the same effect is Child v. Homer, 13 Pick. 503. If, however, there is no connection between the libellous matter published, it is said such evidence ought not to be admitted, (May v. Brown, 3 B. & C. 113.) It is difficult to say, what precise length of time will operate to exclude such evidence, and it may be that time alone will furnish no aid in settling the rule; but in the case before us, it

does not appear that the defendant's publication was provoked by, or in any manner connected with, the previous slanderous words of the prosecutor. Not being shewn to fall within the rule indicated, the evidence was properly refused.

All the questions presented by the points referred, being thus decided, it only remains to add, that the judgment of the Circuit Court is affirmed.