COMMONWEALTH *vs.* JOSEPH MIDDLEBY & others.

Suffolk.   November 14, 1904. — January 30, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Attachment. Practice, Criminal*, Exceptions. *Evidence*, Materiality. *Assault and Battery. Witness*, Cross-examination.

Whether a deputy sheriff attached all the goods in a wholesale warehouse on a writ against the proprietor, after the proprietor had told him to go ahead and attach but that some of the goods were not his, or whether the attachment was only of a part of the goods, is a question of fact to be decided by a jury on consideration of what was said and done at the time as disclosed by the evidence.

An exception by a defendant in a criminal case cannot be sustained to an instruction of the presiding judge, which properly interpreted is correct, on the ground that it might have been misunderstood by the jury, if the defendant did not call the judge's attention to the matter at the trial and ask him to make the instruction more plain.

A deputy sheriff attaching goods in a wholesale warehouse has a right to make a

schedule of the goods before removing them, although after the goods attached are ascertained he cannot keep them on the premises.

On the question of what is a reasonable time to be taken by a deputy sheriff and his assistants in removing goods attached in a wholesale warehouse, it is proper to refuse to allow the proprietor, an experienced shipper familiar with the premises, to testify in his own behalf how long it would take to remove them.

The rights of the owner of goods attached as against the attaching officer and his assistants are in no way affected by the right of the officer to ask for instructions as to the property to be attached from the plaintiff on whose writ he is making the attachment.

It is no defence to a complaint for assault and battery that the defendant was acting under the advice of counsel, which turned out not to be correct.

It is within the discretion of the presiding judge at the trial of two defendants for assault and battery, one of whom has testified in his own behalf that he took no part in the assault, to allow the government to ask this defendant on cross-examination whether he did not approve of the assault, for the purpose of impeaching his credibility as a witness, although the silent approval of an assault and battery is no crime.

COMPLAINT, received and sworn to in the Municipal Court of the City of Boston on November 21, 1902, against Joseph Middleby, Jeremiah J. McCarthy and another man described as a person whose name was unknown, afterwards shown to be Charles Middleby, son of Joseph, for assault and battery upon Joseph E. Donovan and Thomas J. Dooley.

On appeal to the Superior Court the case was tried before *Bond*, J. It appeared, that at about half past one o'clock on the afternoon of November 20, 1902, one Francis Martin, a deputy sheriff, made an attachment in an action brought by one Hallett of the property of the defendant Joseph Middleby, and placed a keeper in his warehouse at No. 201 on State Street in Boston where he carried on the business of a wholesale dealer in baker's supplies. The defendants contended that the only property attached by Martin was thirty-one barrels of sugar, and the Commonwealth contended that all the goods in the warehouse belonging to the defendant Joseph Middleby were under attachment. The defendant Joseph Middleby said to Martin "Very well, go ahead and attach, but some of the goods are not mine," and refused to tell him which goods were his. Immediately after the attachment was made, Joseph Middleby notified Martin to remove the property attached or the keeper. Thereupon the sheriff sent his clerk, one Donovan, to the premises with directions to make a schedule of the property preparatory to its removal, and later sent one Dooley to assist Donovan in preparing

the schedule. It appeared that Donovan reached the warehouse at about half past two o'clock and Dooley at about four o'clock on the afternoon of the day in question. From the time of their respective arrivals on the premises until about five o'clock on that afternoon Donovan and Dooley were engaged in making a schedule of thirty-one barrels of sugar, taking the weights and markings on each barrel, and of about five hundred pails of pie filling and jam. There was evidence on the part of the Commonwealth that this list-making proceeded properly and with diligence, while the defendants contended that Donovan and Dooley were dilatory and negligent, and acted in bad faith. Shortly before five o'clock, while Dooley was moving a box of raisins belonging to the defendant he spilled some of the raisins, and soon after the defendants ejected him from the premises, he making but slight resistance and not being injured. This constituted the assault and battery alleged in the complaint.

The defendant Joseph Middleby testified on his own behalf that he was not present at the putting out of Dooley, gave no order for it and took no part in it, but was in his office some thirty or forty feet away. On cross-examination he was asked " Now, if he was seized and put out, it was done with your approval, wasn't it "? This question was objected to by the defendant Joseph Middleby, and was allowed by the judge. The defendant answered as follows: "*A.* I knew nothing about its being done; after it was done, I did know. *Q.* You did then approve of it? *A.* Yes, sir; I did."

Upon the evidence the counsel for the defendants requested the judge to instruct the jury that the only property attached was the thirty-one barrels of sugar. This the judge refused to do, and the defendants excepted.

It was contended in behalf of the defendants that the pails of pie filling, jam and raisins were not under attachment, and that as to them Dooley was a trespasser and was ejected lawfully from the warehouse while handling these goods.

The defendants asked the judge to make the following rulings :

1. That if the jury shall find that the deputy sheriff, upon receiving the notice served upon him by Joseph Middleby, and the latter's declining to point out to him what was his property, had

reasonable ground to believe that in making an attachment under the writ at the store he might make a mistake and expose himself to an action for damages by attaching property wrongfully, it was thereupon the duty of the deputy sheriff to require the plaintiff Hallett to show him the property of the defendant Joseph Middleby to be attached under the writ, and also, ·if he chose, to require of Hallett a bond to protect him against any mistake made in conforming to Hallett's direction.·

2. That Dooley, not being on the defendant Joseph Middleby's premises as a keeper of the sugar, was a trespasser, and all the defendants had the right to treat him as a trespasser.   [This exception was waived.]

3. That the taking of a schedule of the personal property, being for the convenience of the officer, the officer had no right to use the premises of the defendant Joseph Middleby for the purpose, and that it was incumbent upon the deputy sheriff forthwith to have removed merchandise or personal property to the amount of $2,000 from the premises of the defendant Joseph Middleby within a reasonable time.

4. Such reasonable time is the time usually necessary for the removal of such merchandise and property according to the usage of the business in which the defendant Joseph Middleby was engaged.

5. As to Joseph Middleby, if he acted in good faith and under the direction of his counsel and without express malice, the verdict must be for that defendant.

6. If the defendants Joseph Middleby and Charles Middleby, or either of them, acted in good faith under the advice of their attorney, Mr. McCarthy, there is no presumption of criminal intent, and unless such intent is proved by the government the verdict must be for the defendants.

7. The occupation by Martin, deputy sheriff, of the warehouse of the defendant Joseph Middleby at 201 State Street, Boston, with a keeper for over three hours in the afternoon during business hours, between the hours of half past one and five o'clock, without making any attempt to begin to remove the goods was, as a matter of law, unreasonable, and made Martin and all persons claiming to be there by or under him trespassers.

8. That the defendant Charles Middleby, being the son of the defendant Joseph Middleby, had a right to protect the property of his father against the acts of Dooley and Donovan, or either of them, if they or either of them were carelessly or wilfully destroying or injuring the same, or if they failed on demand to show a written deputation from the deputy sheriff, or if they refused to give reasons for their presence when asked.

The judge refused to make any of these rulings in the form requested, and gave certain other instructions which so far as material are mentioned in the opinion. The jury returned a verdict that the defendants Joseph Middleby and Charles Middleby were guilty of the charge set forth in the complaint, and that the defendant McCarthy was not guilty. The defendants Joseph Middleby and Charles Middleby alleged exceptions.

*J. K. Berry,* (*E. C. Upton* with him,) for the defendants Middleby.

*F. H. Chase,* Second Assistant District Attorney, for the Commonwealth, submitted a brief.

LORING, J. 1. The presiding judge was right in refusing to rule as matter of law that only the sugar was attached. The ground on which the defendants support their contention here is that the only interpretation which could be put on what took place was that the officer determined to and did take into his possession nothing but the sugar because he was frightened by Joseph Middleby's notice that some of the property was not his, although it turned out that the sugar was worth no more than $500 to $600 and the *ad dammum* of the writ was $2,000. We are of opinion that the jury were warranted in finding that the sheriff took into his possession and left in the custody of the keeper all the stock in trade on the first floor of the store at least, with instructions to release such articles as Middleby wished to ship away before they were scheduled, but not to release the sugar.

The exception to so much of the charge as deals with the question whether more than the thirty-one barrels of sugar were attached must be overruled.

Whether Martin took into his possession and kept in his custody more than the sugar was a question of fact depending on the inferences to be drawn from the evidence, and properly was left to the jury.

2. The presiding judge did not tell the jury that the question of what was attached depended upon what Middleby understood was attached. What he did tell the jury was that in determining what took place they could consider what was said or what was not said at the time by Middleby. That is all that was meant by the presiding judge when he told the jury that they might consider whether or not, "if it had been understood by the owner of the property that nothing was attached but the sugar, . . . some remark of that kind would not have been made." This particular matter was not brought to the attention of the judge. If the defendants thought that this was misleading they should have brought it to the judge's attention, so that it could be stated more plainly.

3. So of the exception to that portion of the charge in which the judge, in instructing the jury as to whether more was attached than the sugar, asked them whether the fact that more was attached was made known to Joseph Middleby. Also in telling them that in considering what effect was to be given to what was done they could take into consideration all the circumstances including the prior negotiations for a bond. An officer cannot make an attachment by an undisclosed mental process. Whether the officer did take possession of more than the sugar was a fact. That was what was meant by this portion of the charge, and here again this particular matter was not brought to the attention of the judge to be corrected if not altogether plain.

4. Joseph Middleby properly was not allowed to testify as to how long a time would be required to take out from the store thirty-one barrels of sugar and one load of pie filling and to put them on the wagons. In the first place the deputy sheriff was not bound to remove the goods attached before making a schedule of them, and in the second place the question in regard to handling the goods with which the jury had to deal was not how long a time would be required by an experienced shipper familiar with the premises, but how long a time would be taken by a deputy sheriff and his assistants.

5. The question of unreasonable delay properly was left to the jury under all the circumstances, including Middleby's notice as to ownership, which in itself justified proceeding with more than

usual caution. The judge did not assume that the pie filling and jam were attached, but left that to be determined by the jury. Nor did he instruct the jury that the deputy sheriff had a right to send Dooley there to assist in maintaining his possession. What he did say was that he could maintain Dooley's presence on the premises when he was acting for him in making a schedule. The instruction was right that the deputy sheriff had a right to schedule the goods before removing them, although after the goods attached are ascertained he cannot keep them on the premises. *Steuer* v. *Maguire*, 182 Mass. 575, 577. *Williams* v. *Powell*, 101 Mass. 467. *Davis* v. *Stone*, 120 Mass. 228. The attempt of Middleby to embarrass the officer by telling him to act at his peril and at the same time to hold him to speedy action is plain. The attempt is not to be looked upon with favor. This covers the refusal to give the third ruling asked for.

6. The rights of Joseph Middleby on the one side and of the deputy sheriff and his assistants on the other do not depend on the deputy's right to ask for instructions from Hallett. That matter is immaterial, and the first ruling requested, if given, might have been misleading.

7. Middleby's contention that if he wrongfully commits assault and battery on a man under bad advice, the assault and battery are not wrongful and he is not guilty of a criminal assault and battery, is not law. Such a man is guilty unless he in fact had a justification. *Commonwealth* v. *Randall*, 4 Gray, 36. *Commonwealth* v. *Rigney*, 4 Allen, 316. What was said in *Commonwealth* v. *Ruggles*, 6 Allen, 588, 590, relied on by the defendants was with reference to the question whether a man who lawfully was resisting being put off a highway on which he had a right to be could be arrested for assault and battery.

8. Finally, the exception on the question put to Joseph Middleby on cross-examination must be overruled. Of course this defendant could not be convicted for silent approval of the assault and battery committed by others. But on the question of the credit to be given to his testimony it was competent for the presiding judge in his discretion to allow the government to show his attitude toward the assault and battery which was committed.

*Exceptions overruled.*